[No. 39039.    En Banc.    April 24, 1969.]

HARRY J. URBAN et al., *Respondent,* v. THE DEPARTMENT OF
LABOR AND INDUSTRIES, *Appellant.*\*

*The Attorney General* and *Robert G. Swenson, Assistant,*
for appellant.

*Joseph J. Stangle,* for respondent.

HILL, J.—The question in this case[1] is whether the widow
of a deceased workman can pursue his claim for permanent
partial disability under the workmen's compensation act
when the claim was unliquidated at the time of his death.

*\*Reported in 454 P.2d 395.*

---

[1]The case history is as follows: Harry J. Urban sustained an in-
dustrial injury on August 8, 1962. This was reported to the Department
of Labor and Industries, which closed the claim on October 5, 1962, with
no award for permanent partial disability. Mr. Urban filed a notice of
appeal with the Board of Industrial Insurance Appeals. The department
then directed that its order of October 5, 1962, be held in abeyance
pending further investigation. February 21, 1963, it issued a new order
—again closing Mr. Urban's claim with no award for permanent partial
disability; and he filed another notice of appeal with the board. Hear-

The answer must be found in our industrial insurance statutes notably Laws of 1911, ch. 74, § 10, p. 364, and the provisos added to it (presently RCW 51.32.040). The portion of the statute preceding the provisos reads as follows (the bracketed material indicates changes since the original enactment):

No money paid or payable under this [title] out of the accident fund [or out of the medical aid fund] shall, prior to [the] issuance and delivery of the warrant therefor, be capable of being assigned, charged, [or] ever be taken in execution or attached or garnished, nor shall the same pass, [or be paid], to any other person by operation of law, [or by any form of voluntary assignment, or power of attorney]. Any such assignment or charge shall be void: . . .

A number of provisos have been added to this section. It is with two of them, which will be referred to as the permanent-partial-injury proviso and the time-loss proviso, with which we are here concerned. They will be quoted in parallel columns later in this opinion.

In construing the statute before the provisos were added, we held that unless an award had been secured by the

ings were held on that appeal and all evidence completed March 3, 1964. The board's hearing examiner then prepared a proposed decision and order sustaining the department's order of February 21, 1963, to which Mr. Urban filed exceptions on May 5, 1964. The next day, May 6, 1964, Mr. Urban *died from causes unrelated to his injury.*

On August 18, 1964, the board (not having been advised of Mr. Urban's death) rejected the examiner's proposed decision and order; reversed the department's orders of February 21, 1963, and October 5, 1962, and ruled that in consequence of the industrial injury sustained August 8, 1962, Mr. Urban was entitled to a permanent-partial-disability award equal to 10 per cent of the maximum allowable for unspecified disabilities—the total award being $875. The department (likewise unaware of Mr. Urban's death) complied with the board's order and made such an award.

Thereafter, on being advised that Mr. Urban had died on May 6, 1964, of causes unrelated to his industrial injury, the department canceled its order granting the award for the reason that there had been no determination during his lifetime that he was entitled to such an award. Mr. Urban's widow appealed to the board which denied the appeal. She then appealed to the superior court which, in effect, directed the department to pay to the widow the 10 per cent ($875) award. The department appealed to this court.

injured workman from an administrative or judicial body, his claim for time loss or permanent partial injury abated with his death. *Zahler v. Department of Labor & Indus.*, 125 Wash. 410, 217 Pac. 55 (1923); *Ray v. Industrial Ins. Comm'n*, 99 Wash. 176, 168 Pac. 1121 (1917).

In *Curry v. Department of Labor & Indus.*, 49 Wn.2d 93, 97, 298 P.2d 485 (1956)—subsequent to the provisos—we held that a widow of a deceased workman would not be permitted to pursue his claim for permanent partial disability because there had been no award prior to his death, stating that, prior to an award, "[h]is claim was personal to himself and abated at his death."

Despite the *Curry* opinion, it is contended (relying on the time-loss proviso as construed by this court in *Lightle v. Department of Labor & Indus.*, 68 Wn.2d 507, 413 P.2d 814 (1966)) that the time-loss proviso is similar to the permanent-partial-injury proviso; and that the *Lightle* case is, therefore, authority for the proposition that a widow may pursue her husband's unliquidated claim for permanent partial disability.

It is vigorously argued that the *Curry* and *Lightle* opinions are inconsistent. It is our view that the *Curry* case correctly construes the permanent-partial-disability proviso and that the *Lightle* case correctly construes the time-loss proviso. We shall place the provisos in parallel columns to make clear the differences.

Permanent-partial-injury proviso:
That if any workman suffers a permanent partial injury, and dies *from some other cause than the accident which produced such injury before he shall have received payment of his award* for such permanent partial injury, . . . the amount of such permanent partial *award,* . . . shall be paid to his widow. (Italics ours.)

Time-loss proviso:
That, if any workman *suffers an injury and dies therefrom* before he shall have received payment of any monthly installment covering time loss for any period of time prior to his death, the amount of such monthly *payment shall be paid to his widow* . . . (Italics ours.)

There are two patent distinctions between these two provisos. The permanent-partial-injury proviso deals with payments to. be made to a widow after the workman's death *from some other cause than the accident which produced his injury,* and clearly provides that what is to. be paid is the *amount of an award which has been made to the workman* but not paid to him at the time of his death.

The time-loss proviso deals with payments to be made to a widow, after the workman's *death from the injury he has sustained,* of any monthly installment covering time loss for any period prior to his death. No award is necessary; the time loss is the expected result from the injury.

The court, in the *Lightle* case, was aware of the *Curry* case construing the permanent-partial-injury proviso; was likewise clearly aware that the provisos were not similar, and it expressly distinguished them in stating that,

> The *Albertson*[2] case holds that, where a *disability* award (as distinguished from time loss compensation) has not been granted during the lifetime of the decedent, the claim does not survive by "operation of law" to the widow or children.
>
> Appellant also relies on *Curry v. Department of Labor & Indus.,* 49 Wn.2d 93, 298 P.2d 485 (1956). This likewise is not a "time loss" case, and did not involve an interpretation of the proviso here in question. In the *Curry* case, this court said: "He [the workman] filed a claim with the department, which was allowed. *Time loss was paid,* and medical treatment given." (Italics ours.) In interpreting RCW 51.32.040 as it relates to *disability* claims which have not ripened into a verdict or judgment, the court held that "His [the workman's] claim was personal to himself and abated at his death."

(*Lightle v. Department of Labor & Indus.,* 68 Wn.2d 507, 511, 413 P.2d 814)

We are satisfied that there is no conflict between the *Lightle* and *Curry* cases, and that *Curry* and *Albertson* correctly construed the permanent-partial-injury proviso.

---

[2]*Albertson v. Department of Labor & Indus.,* 28 Wn.2d 750, 184 P.2d 53 (1947).

The judgment of the superior court appealed from is set aside with instructions to enter an order dismissing Mrs. Urban's action against the Department of Labor and Industries.

HAMILTON, NEILL, and McGOVERN, JJ., and DONWORTH, J. Pro Tem., concur.

HALE, J. (dissenting)—It does not appear to me that the deceased workman's widow is, as the majority suggests, pursuing an unliquidated claim after her husband's death. Her claim, as I see it, is about as liquidated as a claim can get. As I read this record, Harry J. Urban, before he died, had presented all of his evidence, made all of his arguments, and left nothing undone necessary to establish his right to a permanent partial disability award. That the board, in August, 1964, found he was legally entitled to the award in the amount of $875 for injuries sustained in August, 1962, in my opinion means that his right to the award vested in his lifetime—and he would have received it but for delays in administering the workman's compensation act. His right having vested, it would ordinarily become a part of his estate subject to administration except that the legislature has provided a speedier and more efficient way to get the money to his family. Thus, the question, as I see it, is what happens to the money when, on appeal from an order of denial by the Department of Labor and Industries, the Board of Industrial Insurance Appeals orders a permanent partial disability award only to learn later that, in the meanwhile, the injured workman had died from causes not connected with the industrial injury? Does the award lapse, or should it go directly to the deceased workman's widow or surviving children under RCW 51.32.040?

Harry J. Urban, an injured workman, died from causes unrelated to his industrial injury prior to an award for 10 per cent permanent partial disability granted him by the Board of Industrial Insurance Appeals. The board had granted the award without knowledge of the workman's death and, on the department's appeal, the superior court

affirmed the award to his widow. The department appeals. I think a detailed chronology of events will make things clear.

Injured August 8, 1962, Mr. Urban timely filed an accident report with the Department of Labor and Industries alleging that he had sustained an industrial injury. The department considered the claim and on October 5, 1962, ordered it closed with no award for permanent disability. Mr. Urban, thereupon, on October 23, 1962, filed a notice of appeal with the Board of Industrial Insurance Appeals from the department's order denying his claim.

Then, after the appeal had been filed with the board, the Department of Labor and Industries directed that its order of October 5, 1962, closing the claim without award, be held in abeyance pending further investigation. The Board of Industrial Insurance Appeals accordingly denied the appeal November 8, 1962, because it did not then have before it an appealable order.

Between November 8, 1962, the date of the order of abeyance, and February 21, 1963, the department kept jurisdiction of Mr. Urban's claim. On the latter date, it issued a new order, again closing Mr. Urban's claim with no award for permanent partial disability, thus adhering to its first order on October 5, 1962. One week later, February 28, 1963, Mr. Urban filed a notice of appeal with the board; hearings were held; and all evidence was completed March 3, 1964.

Nearly 2 months after the conclusion of the hearing on March 3, 1964, the board's hearing examiner, pursuant to statute, prepared and entered a proposed decision and order on April 24, 1964, sustaining the department order of February 21, 1963, denying any award for permanent partial disability and closing the claim. Mr. Urban, May 5, 1964, filed with the board timely exception to the examiner's proposed decision and order. Next day, May 6, 1964, Mr. Urban died from causes unrelated to his injury, although neither the board nor the department learned of his death until November.

August 18, 1964, unaware of Mr. Urban's death, the board entered an order reversing the examiner's proposed deci-

sion and order; it reversed the department's orders of February 21, 1963, and October 5, 1962, denying any permanent partial disability award; and it ruled that, by reason of an industrial injury sustained August 8, 1962, Harry J. Urban was entitled to a permanent partial disability award equal to 10 per cent of the maximum allowable for unspecified disabilities ($875). The department thereupon complied with the board's order and implemented it on September 28, 1964, by granting the 10 per cent award.

Thereafter, counsel notified the department on November 21, 1964, that Mr. Urban had died May 6, 1964, of causes unrelated to his industrial injury. The department canceled its order granting the award, and the board denied an appeal therefrom. Claimant's widow appealed to the superior court the board's order denying the appeal.

Sitting without a jury, the superior court made findings of fact and conclusions of law and filed a judgment reversing the board and in effect directed the department to pay to claimant's widow, Roxy Urban, the 10 per cent ($875) award. From this judgment, the department appeals, contending that claimant's death from causes unrelated to the industrial injury cut off the surviving widow's right to the award because the claimant had not been awarded anything at the time of his death.

The department contends that, at the time of his death, claimant had received no award. The department says that the only determination of claimant's rights prior to his death was an order of the Department of Labor and Industries closing his claim with no award whatever, and an order of the board's hearing examiner sustaining the department's ruling. It insists that, unless the claim for permanent partial disability has ripened into an award before death from extraneous causes occurs, the award will not survive or pass to the claimant's widow. In my judgment, however, this position is untenable under the express language of the pertinent statutes.

An analysis of RCW 51.32.040, first enacted in 1911, with no proviso for the disposition of workman's awards to his

surviving widow or children, leads me to the conclusion that subsequent provisos were added by the legislature to cover the very predicament in which claimant's widow is now caught.

As originally enacted, Laws of 1911, ch. 74, § 10, p. 364, was designed to keep all awards out of the reach of a workman's creditors, and to prevent his assigning it. It stated:

> No money paid or payable under this act out of the accident fund shall, prior to issuance and delivery of the warrant therefor, be capable of being assigned, charged, nor ever be taken in execution or attached or garnished, nor shall the same pass to any other person by operation of law. Any such assignment or charge shall be void.

In *Ray v. Industrial Ins. Comm'n*, 99 Wash. 176, 168 Pac. 1121 (1917), where the workman died before the warrant for his award issued, leaving no widow or children surviving him, this court held that the award did not pass to his administrator as an asset of his estate. The essence of that decision was, of course, to give effect to the statute and to preclude the award, as the statute then said, from passing *"to any other person by operation of law."* (Italics mine.) We said:

> The deceased left no heirs and no estate, other than his claim against the insurance fund; however, there are outstanding debts amounting approximately to $400.

Following *Ray*, there came before this court on a similar point *Zahler v. Department of Labor & Indus.*, 125 Wash. 410, 217 Pac. 55 (1923), where the department made an award for permanent partial disability compensation to the claimant workman, but the warrant in payment therefor had not been issued when he died. We said then, in denying the widow's claim to this award, that the right to that award did not survive to the widow.

After these decisions, however, the legislature enacted the following provisos to RCW 51.32.040, which I think are controlling in the instant case:

> *Provided, That if any workman suffers a permanent partial injury, and dies from some other cause than the*

*accident which produced such injury before he shall have received payment of his award for such permanent partial injury,* or if any workman suffers any other injury and dies from some other cause than the accident which produced such injury before he shall have received payment of any monthly installment covering any period of time prior to his death, *the amount of such permanent partial award,* or of such monthly payment or both, *shall be paid to his widow,* if he leaves a widow, or to his child or children if he leaves a child or children and does not leave a widow: *Provided further,* That, if any workman suffers an injury and dies therefrom before he shall have received payment of any monthly installment covering time loss for any period of time prior to his death, the amount of such monthly payment shall be paid to his widow, if he leaves a widow, or to his child or children, if he leaves a child or children and does not leave a widow . . .

(Italics mine.)

Thus, having already in 1911 immunized the workman's award from attachments, garnishments or assignments, the legislature enacted the foregoing provisos to RCW 51.32.040 as a simple method of getting the money to the workman's widow or children by the quickest and most direct means and at a time of their apparent greatest need.

I have no difficulty understanding the foregoing statutory provisions nor in ascertaining what the legislature meant by them for the language is clear and precise. Indeed, one would be hard put to express the idea with greater clarity. I think it quite clear that the legislature intended that the award to an injured workman who dies before delivery of the award should go directly to his widow or dependent children and does not survive to his personal representatives for the benefit of creditors, heirs or emancipated children. *In re Cassel,* 63 Wn.2d 751, 388 P.2d 952 (1964).

Similarly, *Lightle v. Department of Labor & Indus.,* 68 Wn.2d 507, 413 P.2d 814 (1966), seems to rest on a rationale of controlling authority in the instant case. There, the husband, injured in the course of his employment, claimed time loss under the Industrial Insurance Act. The department, by order of its hearing examiner, rejected the claim

and claimant filed exceptions to the examiner's order and report. Before the board acted upon the exceptions, however, claimant died, and the board thereupon dismissed the appeal on the ground that the time loss claim abated with claimant's death. On eventual appeal to this court, we held that, under RCW 51.32.040, *supra*, and the proviso pertaining to time loss, the widow was entitled to pursue her husband's unliquidated claim for time loss compensation. Alluding directly to the time loss proviso of that statute—a kindred proviso to the proviso pertaining to permanent partial disability in the same section—we said that "Under the statute, the widow is the real party in interest" and held that the amount of the award should be paid directly to her.

Again, as in *Lightle*, I would say that the widow is the real party in interest and that the statute directs that the award be paid directly to her. Thus, where a workman dies before he shall have received payment of an award due him by virtue of a claim regularly made prior to his death, the award under the amendatory provisos to RCW 51.32.040 should be paid directly to his widow or dependent children in accordance with statute.

I thus dissent because I believe the majority opinion runs directly counter to the intention and language of the statute it purports to construe. I see no escape from the conclusion that the statute means exactly what it says: When a workman, entitled to a partial disability award, dies before delivery of the warrant, the money shall be paid directly to his widow. Obviously the legislature intended to bypass the delays and expenses of probate and get the money to the widow quickly at a time when presumably she would need it most.

The statute and case law, I think, expressly meet the instant situation and I would hold that the award should go directly to the widow.

Hunter, C. J., Finley and Rosellinl, JJ., concur with Hale, J.

FINLEY, J. (dissenting)—I concur wholeheartedly in Justice Hale's dissent.

To the considerations there advanced I would add these observations. Cases such as this require this court to construe the industrial insurance legislation of our state. At risk of stating the obvious, that legislation was intended to be remedial.

The common law system governing the remedy of workmen against employers for injuries received in hazardous work is inconsistent with modern industrial, conditions. In practice it proves to be economically unwise and unfair. Its administration has produced the result that little of the cost of the employer has reached the workman and that little only at large expense to the public. *The remedy of the workman has been uncertain, slow and inadequate.* Injuries in such works, formerly occasional, have become frequent and inevitable. *The welfare of the state depends upon its industries, and even more upon the welfare of its wage-worker.* The State of Washington, therefore, exercising herein its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy, and *sure and certain relief for workmen,* injured in extra hazardous work, *and their families and dependents is hereby provided* regardless of questions of fault and to the exclusion of every other remedy.

(Italics mine.) Laws of 1911, ch. 74 § 1; RCW 51.04.010.

Mr. Urban was injured on August 8, 1962. The claim was closed October 5, 1962 with no award for permanent partial disability by the Department of Labor and Industries. Mr. Urban appealed. *The department then reopened the record, holding the appeal in abeyance until February 21, 1963 —for 4½ months.* At that time Mr. Urban's claim was again closed without the award, and he again appealed. The hearing examiner prepared an affirmance, to which exceptions were taken on May 5, 1964. On August 18, 1964, the Board of Industrial Insurance Appeals rejected its examiner's decision and reversed the departmental orders. Mr. Urban, unfortunately, died 3½ months before the glacial administrative process of the department had determined he was entitled to relief.

Had the department not reconsidered its original denial of an award for permanent partial disability, Mr. Urban's widow, assuming the same chronology, would have been some $875 wealthier. Instead, despite the fact that Mr. Urban was found to be entitled to an award for permanent partial disability, and despite a superior court reversal of the board's cancellation of the award due to Mr. Urban's death, the widow is still awaiting payment while the machinery of justice slowly grinds toward final disposition.

The majority treats the existence of an order of award as a condition precedent to the operation of the proviso, which leads me to conclude that the evil which they believe the legislature sought to remedy was the lapse of awards which had been adjudicated but were unpayable because of the decisions in *Ray v. Industrial Ins. Comm'n,* 99 Wash. 176, 168 P. 1121 (1917) and *Zahler v. Department of Labor & Indus.,* 125 Wash. 410, 217 P. 55 (1923). That is, of course, a possible strict construction.

Justice Hale treats the existence of an injury compensable as a permanent partial disability as the condition precedent to the operation of the proviso, making the relief co-extensive with the right. That is the reasonable construction.

The statute requires judicial construction. I am concerned that it should be necessary to restate at this time that the purpose and intent of industrial insurance is remedial and that such legislation should be liberally construed to accomplish its beneficient objectives. As the statute *must* be construed, realism requires that we recognize the relative ease of access to the legislative process for correction of a possible error in our construction of the so-called legislative intent. The classes of persons affected by this suit are respectively employers making payments into the industrial insurance fund and the widows and children of injured workmen who die during the administrative processing of a permanent partial disability award from causes not related to the original injury. The former class is cohesive, politically active, and well aware of its economic in-

terests. The latter class has no unity of interests apart from the circumstances of this lawsuit, is not politically active as a class, and is less aware of both its legal and political interests. It maintains neither lobbyists nor legislative counsel.

These considerations do not constitute this court a super-legislature. But it is suitable for this court, in a case in which various constructions of a statute contend for recognition, to consider the consequences of its action in the selection of one of those interpretations. As to employers paying into the industrial insurance fund, the effect of this case is, at most, minute. Persons similarly situated to the plaintiff are not found on every street corner. As to the statutory beneficiaries, this case may be of extreme importance. If in weighing the interests involved we discount the cost to the employer by the ease with which he may secure legislative consideration of his interests, and multiply the importance to the statutory beneficiaries of a recovery by the difficulty with which they could obtain legislative redress, I think the balance of justice inclines rather rapidly towards the plaintiff. Such jurisprudential considerations are by no means novel, *cf.* C. Peck, *Role of the Courts and Legislatures in the Reform of Tort Law,* 48 Minn. L. Rev. 265 (1963), and I believe that they are appropriate for our consideration in this area of law, which would never have been born had it not been for the failure of the common law of torts and of common law judges to adequately adapt to the realities of modern industrial production. See Laws of 1911, ch. 74, § 1, *quoted supra.*

One further observation on the merits is in order. The majority has relied upon *Curry v. Department of Labor & Indus.,* 49 Wn.2d 93, 298 P.2d 485 (1956), and *Albertson v. Department of Labor & Indus.,* 28 Wn.2d 750, 184 P.2d 53 (1947). *Albertson* characterized a claim prosecuted on behalf of surviving children as one "by operation of law" and excluded the children from the benefit of the provisos. There is no point in discussing the court's rationale because the court failed to express one. It simply ignored the provi-

sos without attempting to analyze them. *Curry* engages in general discussion as to the relation between assignability and survivability of claims in order to justify a conclusion that the claim would not survive under the statute without benefit of the provisos. It then relies on *Albertson* for the conclusion that a claim for permanent partial disability does not survive under the first proviso.

*Lightle v. Department of Labor & Indus.*, 68 Wn.2d 507, 413 P.2d 814 (1966) (Ott, J.), carefully distinguished the *Curry* and *Albertson* cases. The majority is correct that the result of those cases is consistent with the result of *Lightle*. The rationale of *Lightle* and its analysis of the legislative intent are, however, utterly irreconcilable with the lack of analysis in *Albertson* and sterile stare decisis in *Curry*.

I must therefore join Justice Hale in preferring a recent analogous case, construing the statute with reference to the legislative intent, to cases in point whose lack of rationale and hostility to clearly expressed legislative intent have not improved with age.